ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| BRENDA N. LEÓN SUÁREZ<br><br>Recurrente<br><br>V.<br><br>SUBDIRECTOR(A) DE ASUNTOS LEGALES-**CLASIFICACIÓN ANTERIOR;** SUBDIRECTOR(A) DE ASUNTOS LEGALES-**CLASIFICACIÓN LUEGO DEL CAMBIO;** ADMINISTRACIÓN DE COMPENSACIONES POR ACCIDENTES DE AUTOMÓVILES (ACAA)<br><br>Recurridos | TA2025RA00180 | *REVISIÓN DE DECISIÓN ADMINISTRATIVA* procedente de la Administración de Compensaciones por Accidentes de Automóviles<br><br>Caso Núm. GH-2024-002<br><br>Sobre: Apelación Plan de Clasificación y Estructura Salarial de los Puestos del Servicio de Carrera |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz, y la juez Aldebol Mora

**Brignoni Mártir, Juez Ponente**


**SENTENCIA**


En San Juan, Puerto Rico, a 30 de septiembre de 2025.

Comparece ante nos, por derecho propio, la licenciada Brenda N. León Suárez (en adelante, "la recurrente"), a los fines de solicitar nuestra intervención para que dejemos sin efecto la *"Resolución Final"* emitida y notificada el 30 de junio de 2025, por la Administración de Compensaciones por Accidentes de Automóviles (en lo sucesivo, por sus siglas, "ACAA"). Mediante la referida determinación, la agencia recurrida concluyó que el puesto de Subdirector(a) de Asuntos Legales no estaba correctamente asignado a la escala retributiva dieciocho (18). Por consiguiente, ordenó que debía ser reubicado a una escala retributiva superior, sujeto a la aprobación final de la Junta de Supervisión y Administración Financiera para Puerto Rico ("Junta de Supervisión Fiscal").

Por los fundamentos que expondremos a continuación, *confirmamos* la *"Resolución Final"* que hoy se revisa.

**I.**

Los hechos que motivan el presente recurso de revisión judicial se sintetizan a continuación. El 16 de abril de 2024 ACAA emitió una comunicación escrita intitulada *"Implantación de Nuevo Plan de Clasificación y Estructura Salarial de los Puestos del Servicio de Carrera de ACAA."* Por medio de ésta, le informó a la recurrente que el día 25 de marzo de 2024, la Junta de Supervisión Fiscal aprobó el nuevo "Plan de Clasificación y Estructura salarial para los empleados de carrera de ACAA" (en adelante, "Plan de Clasificación"). Así pues, le indicó a la recurrente que el puesto de Subdirectora de Asuntos Legales que ella ocupaba había sido asignado a la escala retributiva número dieciocho (18). En consecuencia, le informó que su retribución y estatus de empleada permanecería inalterado. Finalmente, ACAA le indicó que de estar inconforme con la comunicación notificada tenía derecho a presentar "una solicitud escrita de revisión administrativa ante el Director Ejecutivo de la Corporación."

Así las cosas, el 9 de mayo de 2024, la recurrente presentó *"Solicitud de Revisión Administrativa sobre el nuevo Plan de Clasificación y Estructura Salarial de los puestos del servicio de carrera de la ACAA."* Alegó, que desconocía los parámetros seguidos al momento de clasificar su escala salarial. Cónsono con lo anterior, sostuvo que ACAA debía revelar los puestos con los cuales se comparó el salario establecido y las razones por las cuales su puesto se encontraba en la misma escala salarial de otros cargos que realizan funciones diferentes. Bajo su entendido, al momento de clasificar las escalas retributivas, ACAA debió considerar sus años de experiencia en la profesión legal y en diversos puestos laborales; su formación académica; habilidades; y desempeño individual.

A tenor de ello, esgrimió que el puesto de Subdirectora de Asuntos Legales debía clasificarse en la escala diecinueve (19), debido a las cualidades de experiencia, preparación y complejidad que revestían al referido cargo laboral. Además, aseveró, que el salario de su puesto había permanecido inalterado salvo por un aumento ínfimo otorgado al amparo del

anterior plan de clasificación y retribución. En virtud de lo expuesto, peticionó un cambio de escala retributiva al número diecinueve (19). Para el logro de ello, advirtió la necesidad de realizar una nueva comparación del puesto de Subdirectora de Asuntos Legales en el mercado laboral.

En atención a dicha solicitud, el 28 de agosto de 2024, el Director Ejecutivo de la ACAA le notificó que acogió la "Recomendación Final" del Comité Revisor y consecuentemente declaró que la clasificación y la asignación retributiva de la recurrente se efectuaron correctamente.

En desacuerdo, el 2 de octubre de 2024, la recurrente presentó una *"Apelación"* ante ACAA. En suma, reiteró su desacuerdo con la escala salarial asignada a su puesto, dado que entiende que la complejidad de su trabajo y los requisitos del mismo no son similares a los otros puestos adscritos a la escala retributiva que le fue asignada. A su vez, adujo que el ejercicio evaluativo realizado sobre la clasificación y retribución no es cónsono con el principio de mérito y carece de objetividad.

Así las cosas, el 10 de junio de 2025, ACAA citó a la recurrente a una vista administrativa informal a celebrarse el 16 de junio de 2025. En esa fecha la ACAA emitió *"Minuta y Orden"* de la que surge que se ordenó que se entregara a la recurrente el expediente administrativo del caso. También se desprende de la *"Minuta y Orden"* una serie de apercibimientos entre los cuales resalta, que la vista informal sería presidida por un juez administrativo; que durante la vista la recurrente tendría la oportunidad de exponer su posición y presentar prueba a su favor; que no se aplicarían las reglas procesales civiles ni las evidenciarias; y que al concluir la vista se emitiría una determinación final con derecho a solicitar revisión judicial. La vista informal se recalendarizó para el 20 de junio de 2025.

Celebrada la vista informal, el 30 de junio de 2025, ACAA notificó la *"Resolución Final"* que hoy es objeto de revisión. Mediante esta, la referida agencia declaró *Ha Lugar* la *"Apelación"* y concluyó que el puesto de Subdirector(a) de Asuntos Legales no estaba correctamente asignado a la escala retributiva dieciocho (18). Por consiguiente, ordenó que debía ser

reubicado a una escala retributiva superior, sujeto a la aprobación final de la Junta de Supervisión Fiscal.

En desacuerdo, oportunamente el 29 de julio de 2025, la recurrente compareció ante este Tribunal mediante un recurso de revisión judicial.[1] A través de este esbozó los siguientes señalamientos de error:

> Erró el Juez Administrativo de la ACAA al ordenar la celebración de vista administrativa informal en el caso de impugnación del Plan de Clasificación y Estructura Salarial de la ACAA.

> Erró el Juez Administrativo de la ACAA al declarar Con Lugar la apelación, en cuanto a la retribución, sujeta a que la ACAA eleve la petición ante la Junta de Supervisión y Administración Financiera para Puerto Rico (JSAF) para la reubicación de la clase de Subdirector(a) de Asuntos Legales (8141) a una escala superior a la 18, dentro del Plan de Clasificación de la ACAA.

Mediante *"Resolución"* emitida el 19 de agosto de 2025, le ordenamos a ACAA que presentara su alegato en oposición. En cumplimiento de ello, el 12 de septiembre de 2025, ACAA presentó el aludido alegato.

Con el beneficio de la comparecencia de ambas partes, procedemos a esbozar el marco doctrinal aplicable a la controversia que hoy nos ocupa.

**II.**

**A. Revisión Judicial y la deferencia a las decisiones administrativas:**

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de las facultades delegadas por ley, cumplan con los mandatos constitucionales aplicables y asegura que los ciudadanos tengan un foro al cual recurrir para vindicar sus derechos. *Voilí Voilá Corp. et al v. Mun. Guaynabo,* 213 DPR 743, 753 (2024). En lo atinente, en el ámbito administrativo, los tribunales apelativos deben conceder una gran deferencia a las decisiones emitidas por las agencias administrativas debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70; *Asoc. Fcias. v. Caribe Specialty et al. II.,* 179 DPR 923,

---

[1] Cabe señalar, que originalmente la recurrente presentó el referido recurso como una apelación bajo la designación alfanumérica: TA2025AP00179. Al examinar el recurso presentado, el 19 de agosto de 2025 emitimos una *"Resolución,"* por medio de la cual acogimos dicho recurso como un recurso de revisión judicial, por éste surgir de una decisión administrativa. Así pues, la Secretaría del foro apelativo asignó al recurso presentado el siguiente número de caso: TA2025RA00180.

940 (2010); véanse también, *Martínez v. Rosado*, 165 DPR 582, 589, (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003).

Ahora bien, nuestro Tribunal Supremo ha reiterado que la deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder, solamente, cuando la misma no esté basada en evidencia sustancial, cuando la agencia ha errado en la aplicación de la ley y cuando su actuación resulte ser una arbitraria, irrazonable o ilegal. *Pérez López v. Depto. Corrección*, 208 DPR 656, 673 (2022); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012). En el escenario particular de las cuestiones de derecho, el Tribunal Supremo ha proferido las siguientes expresiones:

> Hoy hacemos eco a las palabras del foro federal y concluimos que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 2025 TSPR 56.

Por otra parte, nuestro Más Alto Foro ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección, que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *OEG v. Martínez Giraud,* 210 DPR 79, 89 (2022); *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006); *véanse también*, *Otero v. Toyota*, supra; *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 DPR 521, 532 (1993).

**B.     Reglamento de Personal para los Empleados Gerenciales de ACAA ("Reglamento de Personal"), aprobado por la Junta de Gobierno de la ACAA el 19 de julio de 2005 y según enmendado en el año 2016:**

La sección 5.53 del Reglamento de Personal regula los planes de clasificación. Particularmente los define como "[u]n sistema mediante el cual se estudian, analizan y ordenan en forma sistemática, los diferentes puestos que integran una organización formando clases y series de clases." El establecimiento, implantación y administración de los referidos planes se realizará de conformidad a lo que establece el aludido Reglamento de

Personal. Sección 8.1*, supra*. De igual modo, los empleados de carrera deberán dar fiel cumplimiento a los requisitos establecidos en los procesos de reclutamiento, selección y clasificación. Sección 7.1, *supra*.

El Plan de Clasificación será un reflejo de la situación de todos los puestos de ACAA y constituirá un inventario de los puestos autorizados. Sección 8.1*, supra*. Los referidos puestos se agruparán en clases similares a tenor de sus deberes y responsabilidades para dar igualdad de tratamiento a los recursos humanos. Sección 5.17, *supra.* En cuanto a lo que respecta al factor retributivo, éste debe promover los siguientes objetivos: a). Proveer tratamiento justo y equitativo a todo el personal en la fijación de sueldos; y b). Propiciar y estimular la ubicación del personal donde sus capacidades y potencialidades sean de mayor provecho para la agencia y al propio personal. Sección 13.1, *supra*.

El Reglamento de Personal establece además un proceso adjudicativo para que los empleados de ACAA puedan vindicar sus derechos. A tenor de lo anterior, el referido Reglamento promueve el procedimiento adjudicativo mediante la celebración de una vista administrativa informal. Mediante esta vista, se le debe garantizar al empleado su derecho a ser oído con relación a "cualquier formulación de cargos, o en relación con una cesantía, las cuales pudieran resultar en su amonestación, suspensión, separación, o destitución, o en cualquier reclamación relacionada con su empleo en la agencia." Sección 5.73, *supra.*

Como parte del procedimiento adjudicativo el precitado Reglamento faculta al Juez Administrativo a "resolver y adjudicar todas las quejas, querellas, reclamaciones o apelaciones" que radiquen los empleados cubiertos por dicho Reglamento. Sección 18.1, *supra.* El Juez Administrativo debe ser un abogado válidamente admitido a la profesión legal de Puerto Rico y tener experiencia en el tema de relaciones laborales. *Id.*

**C.      Debido Proceso de Ley:**

El Art. II, Sec. 7 de la Constitución de Puerto Rico reconoce el derecho a un debido proceso de ley como garantía protectora de los intereses de

libertad y propiedad. Const. ELA [Const. PR], LPRA Tomo I. La referida salvaguarda exige que el Estado realice un procedimiento justo y equitativo al momento de intervenir con el interés propietario de una persona. *Torres Rivera v. Policía de PR*, 196 DPR 606, 624 (2016). Ante un reclamo fundamentado en la vertiente procesal del debido proceso de ley, corresponde examinar si existe un interés que amerite protección. *Id.* De responder en la afirmativa, procede evaluar cuál es el procedimiento debido. *Id.*

Nuestro Ordenamiento Jurídico reconoce que los empleados de carrera tienen un interés propietario sobre sus empleos el cual amerita protección. *Calderón Otero v. C.F.S.E.*, 181 DPR 386, 399 (2011). A la luz de las circunstancias será el proceso por seguir ante un reclamo de un empleado de carrera, aunque siempre debe prevalecer el requisito general de que el proceso gubernamental sea justo e imparcial. *Domínguez Castro et al. v. E.L.A. I,* 178 DPR 1, 47 (2010). Los requisitos para garantizar la modalidad procesal del debido proceso de ley son los siguientes: (1) la notificación adecuada del proceso; (2) un proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) el tener asistencia de abogado, y (6) que la decisión se base en el expediente del caso. *Calderón Otero v. C.F.S.E.*, supra, pág. 399.

**D. Ley PROMESA**

El 30 de junio de 2016, entró en vigor la Ley de Supervisión, Administración, y Estabilidad Económica de Puerto Rico ("Ley PROMESA"). 48 USCA sec. 2101. Esta ley es una legislación federal promulgada por el Congreso de los Estados Unidos por virtud de la Cláusula Territorial de la Constitución de los Estados Unidos, enmarcada en su Artículo IV, Sección 3, de la Constitución de los Estados Unidos. La sección 4 de esta Ley, expresamente establece que sus provisiones prevalecerán sobre cualquier disposición general o específica de las leyes locales o sobre cualquier otra reglamentación que sea incompatible con esta Ley. 48 USCA sec. 2103;

Véase también, *Frontera Suau v. Padilla Rivera y otros*, 2025 TSPR 54.

Cónsono con lo anterior, cabe hacer mención del voto particular del Juez

Asociado Martínez Torres, al cual se unió el también Juez Asociado Feliberti

Cintrón en el caso *Reliable v. ELA et al.*, 199 DPR 344, 348 (2017). En

particular, resaltamos las siguientes expresiones:

> La Cláusula de Supremacía de la Constitución de Estados Unidos
> ordena a los jueces estatales a seguir lo establecido en las leyes
> federales, sin excepción alguna. Art. VI, Const. EE. UU., LPRA,
> Tomo 1. Asimismo, PROMESA, 48 USCA sec. 2103, establece que
> las disposiciones de esa ley están por encima de las leyes locales o
> de cualquier ley que sea inconsistente con lo que ella dispone. Esto
> también obliga a los jueces locales a resolver conforme a lo que ella
> establece.

La Ley PROMESA estableció la Junta de Supervisión Fiscal, al igual

que estructuró la organización de dicho cuerpo. El propósito de esta Junta

se circunscribe en promover la responsabilidad fiscal de Puerto Rico y su

acceso a los mercados de capital. 48 USCA sec. 2121. La Junta de

Supervisión Fiscal tiene la autoridad de certificar los planes fiscales de

Puerto Rico para cada año fiscal. 48 USCA sec. 2141 (c) (1-2). A esos fines,

la referida Junta revisará cualquier Plan Fiscal propuesto para determinar

que cumpla con los criterios de la Ley PROMESA. 48 USCA sec. 2141 (c)

(3).

**III.**

En lo concerniente a los errores señalados, la recurrente alega que

ACAA incidió al no celebrar una vista formal. Fundamenta su postura en que

la adjudicación de sus derechos en torno al Plan de Clasificación así lo

ameritaba. Cónsono con lo anterior, asevera que se le debió garantizar su

derecho a descubrir prueba, particularmente la oportunidad de citar testigos,

peritos e interrogar a las personas que realizaron el Plan de Clasificación.

Además, sostiene que la impugnación del referido Plan no es una

controversia relacionada a su empleo, por lo que requería la celebración de

una vista formal. Por otro lado, arguye que la *"Resolución Final"* carece de

especificidad y la deja sin derecho a un remedio, puesto que su

implementación depende de la aprobación de la Junta de Supervisión Fiscal.

Por su parte, ACAA aduce que su reglamentación interna no establece la celebración de una vista formal para este tipo de procedimientos. A su vez, esgrime que durante la celebración de la vista informal se le garantizaron a la recurrente las protecciones mínimas de la cláusula del debido proceso de ley. Además, asevera que resulta contradictorio que la recurrente haya prevalecido en su reclamo, y a pesar de ello decidiera impugnar la naturaleza de la vista informal celebrada. En lo relacionado al segundo señalamiento de error, alega que el remedio concedido a la recurrente lleva consigo un impacto fiscal, por lo cual requiere la aprobación de la Junta de Supervisión Fiscal. Considera que resolver lo contrario tendría como resultado la nulidad de la adjudicación de ACAA.

Se hace meritorio expresar que, dado a los errores señalados, la presente revisión judicial se circunscribe a evaluar, por una parte, una cuestión de derecho atinente a la garantía constitucional del debido proceso de ley, y por otra parte la autoridad que ostenta la Junta de Supervisión Fiscal en el ejercicio de la reubicación de un puesto laboral en una nueva escala salarial.

Habiendo puntualizado lo anterior, pasamos a discutir el primer señalamiento de error. En nuestro ordenamiento jurídico, las agencias administrativas han sido revestidas del poder cuasilegislativo a los fines de que éstas puedan aprobar reglas y reglamentos. Véase, *Sierra Club et al., v. Jta. Planificación*, 203 DPR 596, 605 (2019). En dicha función las agencias administrativas "están obligadas a observar estrictamente las reglas que ellas mismas promulgan." *Benítez Nieves v. ELA et al.,* 202 DPR 818, 828 (2019). Es decir, no pueden actuar de manera arbitraria al establecer, cambiar o aplicar a casos particulares sus reglas y reglamentos. *Id.*

En el caso presente, ACAA adoptó un Reglamento de Personal en función del poder que le ha sido conferido. Nótese, que este es un reglamento interno de la agencia que aplica exclusivamente a los empleados gerenciales de carrera y de confianza de ACAA. Véase, el Art. 4 del Reglamento de Personal de ACAA, *supra.* Por consiguiente, no se trata de

un reglamento de aplicación general sino de una regulación especial dirigida al capital humano de la Corporación. Este reglamento contempla los derechos y deberes de los empleados de ACAA y disposiciones procesales a través de las cuales dichos empleados pueden amparar sus respectivas reclamaciones.

En particular, la sección 5.73, *supra* concede a los empleados el derecho procesal a una vista administrativa informal. La precitada disposición lee como sigue: "La oportunidad que tiene un empleado para ser oído con relación a cualquier formulación de cargos, o en relación con una cesantía, las cuales pudieran resultar en su amonestación, suspensión, separación o destitución, **o en cualquier reclamación relacionada con su empleo en la agencia."** (Énfasis suplido). Nótese, que dicha sección no es una lista taxativa, puesto que provee para que un empleado tenga a su favor el recurso de una vista administrativa informal siempre y cuando su reclamación esté relacionada a su cargo laboral.

En el presente caso, la recurrente interesaba impugnar la escala retributiva asignada a su puesto de trabajo en ACAA. Según el derecho que le asiste a la recurrente de conformidad al Reglamento de Personal y a tenor al deber de ACAA de dar fiel cumplimiento a los reglamentos adoptados, el proceso legítimo a seguir en este caso debía ser la celebración de una vista informal. No hay controversia en que la referida vista fue debidamente celebrada. Sin embargo, la recurrente aduce que lo que procedía era la celebración de una vista formal que cumpliera con garantías procesales que le permitieran citar testigos, peritos, obtener prueba y contrainterrogar la prueba presentada por ACAA. De entrada, el texto reglamentario es claro al proveer una vista administrativa informal para toda acción relacionada al cargo laboral de un empleado. Criterio que cumple la aquí recurrente, por versar su causa de acción en la impugnación de un Plan de Clasificación que promovió la ubicación salarial de su puesto de trabajo.

En lo que respecta a las alegaciones sobre la insuficiencia de las garantías procesales, estas fueron debidamente cumplidas. Conforme

expuesto, los empleados de carrera como la aquí recurrente tienen un interés propietario sobre su empleo que amerita protección. A esos efectos, la modalidad procesal del debido proceso de ley garantiza que dichos empleados tengan: 1) notificación adecuada del proceso; (2) un proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) el tener asistencia de abogado, y (6) que la decisión se base en el expediente del caso. *Calderón Otero v. C.F.S.E.*, supra, pág. 399.

Según surge del trámite procesal antes reseñado, el 16 de abril de 2024 la recurrente fue notificada sobre la "Implantación del nuevo Plan de Clasificación y Estructura Salarial de los puestos del servicio de carrera de ACAA." En esa misma comunicación, ACAA le advirtió a la recurrente de su derecho a solicitar revisión administrativa. El reclamo de la recurrente fue examinado por un Comité Revisor y finalmente fue evaluado en una vista administrativa informal y adjudicado ante un Juez Administrativo. De la *"Minuta y Orden"* notificada a la recurrente, se desprende que a ésta se le permitió examinar el expediente administrativo del caso; y se le apercibió de su derecho a ser oída y a presentar prueba a su favor. También surge de dicha *"Minuta y Orden"* que contó con el acompañamiento de asistencia legal. Finalmente, se le notificó una *"Resolución Final"* con las correspondientes determinaciones de hechos y conclusiones de derecho y en ésta se le advirtió de su derecho a peticionar revisión judicial.

En cuanto a los planteamientos de la recurrente sobre la aplicabilidad de las reglas procesales y evidenciarias, es sabido que las Reglas de Evidencia no aplican a los procedimientos administrativos para evitar las trabas procesales de los tribunales de justicia. Véase, *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1004-1005 (2011). Con relación a las Reglas de Procedimiento Civil, éstas como norma general, tampoco aplican a los procesos administrativos a menos que con su aplicación promuevan la solución ágil y sencilla que persiguen los foros administrativos. Véase, SLG *Saldaña-Saldaña v. Junta,* 201 DPR 615, 623 (2018).

Cónsono con lo anterior, cabe resaltar las siguientes expresiones de nuestro Tribunal Supremo: "A menos que la ley orgánica o el reglamento de la agencia conceda mayores garantías procesales, la vista informal no establecerá procedimientos de descubrimiento de prueba, ni vistas adversativas formales, ni concederá al empleado el derecho a confrontar toda la prueba en su contra." *Marrero Caratini v. Rodríguez Rodríguez*, 138 DPR 215, 224 (1995).

Así pues, es meritorio concluir que a la recurrente se le garantizaron las protecciones mínimas de la vertiente procesal del debido proceso de ley. Es preciso señalar, que este caso no versa sobre la suspensión, cesantía o amonestación laboral de la recurrente. Tampoco trata sobre la disminución de su salario o la degradación jerárquica de su puesto, las cuales son afectaciones sustanciales al interés propietario que tiene la recurrente sobre su cargo laboral. Aun ante la sanción máxima de la destitución, nuestro mas Alto Foro ha reconocido que no procede la celebración de una vista formal antes de la ejecución del despido, sino después de que se ejecute dicho despido. Véase, *Torres Santiago v. Depto. Justicia*, supra, pág. 992-993; y *Marrero Caratini v. Rodríguez Rodríguez*, supra, pág. 222- En suma, la importancia de la vertiente procesal del debido proceso de ley estriba en la celebración de procesos justos y equitativos. El procedimiento administrativo de la recurrente cumplió con tales importantes criterios.

Superado la cuestión jurídica atinente al debido proceso de ley, a continuación, examinaremos los méritos del segundo señalamiento de error. Es conocido, que en nuestro ordenamiento jurídico existe una escala jerárquica de las fuentes del derecho puertorriqueño. El orden de las fuentes adoptado lee como sigue: (1) la Constitución de Puerto Rico; (2) las leyes aprobadas por la Asamblea Legislativa; (3) las reglas y reglamentos aprobados y promulgados bajo autoridad de ley por los organismos públicos; (4) las ordenanzas municipales; (5) la costumbre y los principios generales del Derecho; y (6) la jurisprudencia. Véase, 31 LPRA sec. 5312; y *Collazo Cartagena v. Hernández Colón*, 103 DPR 870, 874 (1975). A dicho orden es

necesario sumarle las fuentes jurídicas del derecho federal, particularmente las leyes federales aplicables a Puerto Rico. Éstas tienen primacía sobre las leyes locales y de legislarse en contravención de ellas se estaría ocupando indebidamente el campo.

La Ley PROMESA es una legislación federal aplicable a Puerto Rico que no solo tiene primacía de conformidad a las anteriores consideraciones, sino que expresamente contiene una cláusula de supremacía sobre las leyes locales. Obsérvese, que el propósito central de la Ley PROMESA es promover la responsabilidad fiscal local y su acceso a los mercados de capital. En dicho ejercicio, la Junta de Supervisión Fiscal tiene autoridad y discreción en la administración presupuestaria de Puerto Rico.

En este caso, ACAA declaró con lugar la *"Apelación"* presentada por la recurrente y le concedió el remedio de traslado de escala salarial peticionado, sujeto a la aprobación final de la Junta de Supervisión Fiscal. La recurrente aduce que la "*Resolución Final"* notificada por ACAA carece de especificidad y de un medio concreto de implementación pues requiere la aprobación final de la Junta de Supervisión Fiscal. Primeramente, surge de la comunicación del 16 de abril de 2024, dirigida a la recurrente, que el Plan de Clasificación fue aprobado por la Junta de Supervisión Fiscal. Dicha acción evidencia la autoridad que tiene dicha Junta en la elaboración de estos planes y la necesidad de su anuencia.

Además, el remedio concedido a la recurrente implica trasladar todo un puesto laboral a una escala salarial para la cual no fue contemplado en el proceso de elaboración del Plan de Clasificación. El referido traslado evidentemente incide en la asignación presupuestaria destinada a ACAA para ejecutar dicho Plan. La incidencia es aun mayor en escenarios como este, puesto que un salario de trabajo es una asignación recurrente. Así pues, dado a la autoridad fiscal delegada a la referida Junta y a la discreción que le asiste en el ejercicio de sus facultades, se torna compulsorio que el caso de la recurrente deba ser remitido a dicha Junta para su consideración final.

En cuanto a los argumentos de la recurrente sobre la carencia de especificidad de la *"Resolución Final,"* determinamos que los mismos carecen de mérito. ACAA resolvió expresamente que "se expanda la retribución correspondiente a la clase de Subdirector(a) de Asuntos Legales (8141), conforme argüido por la apelante." En ese sentido, se le concedió a la recurrente el remedio solicitado. La única salvedad, es que la reubicación salarial de su puesto está legítimamente sujeta a la aprobación de la Junta de Supervisión Fiscal debido al ya discutido impacto presupuestario. Así pues, el caso de la recurrente permanece ante la consideración de ACAA para que ésta realice los trámites correspondientes ante la Junta de Supervisión Fiscal de conformidad a lo establecido en la determinación recurrida.

A la luz de la discusión antes reseñada, *confirmamos* en todos sus extremos la *"Resolución Final"* recurrida.

**IV.**

Por los fundamentos que antecedente, *confirmamos* la determinación recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones